UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TOMMY KENT HICKS,

      Petitioner,

v.                                   Case No.  3:12cv473/LC/CJK

MICHAEL D. CREWS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 23).  Petitioner replied.  (Doc. 32).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On January 24, 2007, petitioner was charged with Vehicular Homicide in Okaloosa County Circuit Court Case Number 07-CF-141.  (Doc. 23, Ex. A, p. 6).[1] Petitioner went to trial (Exs. B-E), and on October 10, 2007, a jury found him guilty as charged.  (Ex. A, p. 86; Ex. E, pp. 640).  By judgment rendered January 2, 2008, petitioner was adjudicated guilty and sentenced to 180 months imprisonment.  (Ex. A, pp. 138-143).  Petitioner's judgment of conviction was affirmed on direct appeal, per curiam and without a written opinion, on November 12, 2009.  *Hicks v. State*, 22 So. 3d 542 (Fla. 1st DCA 2009) (Table) (copy at Ex. K).

On April 16, 2010, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising eleven claims.  (Ex. M, pp. 1-45).  Petitioner later supplemented and amended his motion to add five more claims.  (Ex. M, pp. 84-113).  On February 28, 2011, the state circuit court summarily denied thirteen of petitioner's sixteen claims and granted an evidentiary hearing on three claims (Grounds VIII, X and XII).  (Ex. M, pp. 120-203 through Ex. N, pp. 204-237).  Following the evidentiary hearing, the postconviction court denied Grounds VIII and XII and granted relief on Ground X (a claim involving the amount of restitution).  (Ex. N, pp. 281-284).  The Florida First District Court of Appeal ("First DCA") per curiam affirmed on January 23, 2012, without a written opinion.  *Hicks v. State*, 93 So. 3d 1016 (Fla. 1st DCA 2012) (Table) (copy at Ex. R).  The mandate issued May 3, 2012.

Petitioner filed his federal habeas petition in this court on September 26, 2012. (Doc. 1).  The petition raises sixteen claims.  Respondent's answer asserts that each

---

[1]All references to exhibits are to those provided at Doc. 23, unless otherwise noted.  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

of petitioner's claims fails for one or more of the following reasons: (1) the claim does not present an issue cognizable on federal habeas review; (2) the claim is procedurally defaulted; (3) the state court's rejection of the claim was not contrary to or an unreasonable application of clearly established federal law, and did not involve an unreasonable determination of the facts. (Doc. 23, pp. 8-47).

## FACTS

Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury provides context to petitioner's claims. The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Where there are conflicting inferences and disputes exist, this court presumes the jury resolved such conflicts in favor of the prosecution and defers to that resolution. *Jackson*, *supra*; *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).

On December 2, 2005, petitioner was driving a 1996 Chevrolet Impala south on state Highway 85 near Laurel Hill, Florida, when he collided with the victim James Williams, who was driving north in a Chevrolet S-10 pickup truck. Mr. Williams died at the scene. A blood draw from petitioner revealed the presence of Alprazolam and Temazapam, but no alcohol. The State presented evidence that petitioner was driving at an excessive rate of speed in a dangerous portion of the roadway. One lay witness, Mr. Lindley, testified that petitioner passed him just prior to the crash. Lindley estimated petitioner's speed at 100 miles per hour in what was a 45 mile-per-hour zone. (Ex. B, p. 187-88). Petitioner's vehicle then entered a curve in the road. (*Id*.). Another witness, Mr. Korleski, described the road as being, "a pretty serious curve. It's hidden. There's a hill. Coming south on it [the direction petitioner was driving], there's a hill approaching the bridge near the curve. It's kind

of a dangerous part of the road." (Ex. C, p. 204).  One of the State's expert witnesses in accident and crash reconstruction, former Florida Highway Patrol ("FHP") Trooper Michael Hulion, described the road as, "a two lane road, double solid lines running down the center of the road, no passing.  It's a curve and an upgrade going up to a railroad overpass." (Ex. C, p. 215).  Mr. Hulion testified that the roadway has approximately a five-foot paved shoulder on both sides. (Ex. C, p. 218).  The posted speed limit for the area of roadway where the crash occurred is 45 miles per hour. (Ex. C, p. 219).  Mr. Hulion, with the aid of photographs of the crime scene, described the crash as follows:

> As [petitioner's] vehicle is approaching the curve and he [petitioner] runs off the edge of the roadway, the vehicle begins to rotate slightly counterclockwise.  We consider him out of control at that time because the vehicle, the tires are continuing to roll.  They are still rolling forward.  However, they are sideslipping, too.  Even though they are rolling in a forward motion they are beginning to slide to the sideway.  There's no breaking [sic] here.  Okay.  The weight and force are trying to make that car go around that curve.  The speed was too great for it.  Therefore, when he went over, he began to slide. . . . there are slide marks here. . . .The vehicle is continuing in a rotating it's continuing instead of a straight motion, he's beginning to rotate more in a sideways motion now. . . . Here's the marks where it's on the grassy shoulder and then it's coming back over for another crossover here. . . . He's coming back.  He's left the grassy area, coming back onto the paved shoulder. . . . Now, the vehicle is continuing to rotate.  It's now come back onto the paved portion of the roadway starting to slide across there. . . . As the vehicle comes back onto the roadway, [petitioner] was continuing to come on around and he met – when he met the left front of the S-10 vehicle [Mr. Williams' vehicle], his [petitioner's] vehicle was at an angle.  That's why – he's sliding across.  The front of his vehicle is already across the center line.

(Ex. C, pp. 231-237).  Hulion determined that the site of impact was "almost center of the northbound lane." (*Id*., p. 238).  Hulion testified there was no evidence that the

collision occurred in the southbound (petitioner's) lane.  (*Id*., pp. 239-240).  Mr. Hulion's testimony was consistent with photographs of the roadway which showed various marks, gouges and debris on the roadway.  (Ex. C, pp. 236-37, 239; *see also* photographic evidence provided at Ex. A, pp. 23-76).  Mr. Hulion gave his opinion that petitioner was driving a minimum of 78 miles per hour when his vehicle first left the roadway.  (Ex. C, pp. 227, 255-257).  Mr. Hulion took a recorded statement from petitioner via telephone.  (Ex. C, pp. 259-267).

The majority of petitioner's recorded statement was played for the jury.  In the recorded statement petitioner said he remembered watching the tires of an oncoming vehicle (Mr. Williams' vehicle) and seeing them cross the center line.  The tires of the oncoming vehicle were at least two or three tire widths into his (petitioner's) lane. Petitioner made a correction to his right.  When petitioner went off the road he made another correction that resulted in the collision with the vehicle that was in his lane. There was no excessive speed involved.  Prior to arriving at the point of the accident petitioner had passed some vehicles.  Petitioner estimated his speed at 55 miles per hour.  Petitioner had taken one milligram of Xanax that morning, a medicine he had been taking for ten years or more.  (Ex. C, pp. 281-297).  Mr. Hulion testified that petitioner's statement did not cause him to change his opinion as to how the accident occurred.  (Ex. C, p. 297).  Mr. Hulion found a prescription for Alprazolam (Xanax) with petitioner's name on it in the glove box of the vehicle petitioner was driving. (Ex. C, pp. 301-302).  Among other things, the prescription stated:  "May cause drowsiness.  Alcohol may intensify this effect.  Use care when operating a car or dangerous machinery."  (Ex. C, p. 302).

Another State expert in accident reconstruction, independent expert Perry Ponder, testified that petitioner's vehicle was traveling at 92 miles per hour when it began to leave marks as it first left the shoulder of the roadway; that petitioner's

vehicle was traveling at 51 miles per hour at the point of impact with Mr. Williams' vehicle; that Mr. Williams' vehicle was traveling at 40 miles per hour at the point of impact; and that petitioner could not have been reacting to encroachment into his lane by Mr. Williams' vehicle.  (Ex. D, pp. 404, 419, 434).  Mr. Ponder stated that the curve in the roadway is a little over 90 degrees.  (Ex. D, p. 406).  Mr. Ponder testified that his speed calculations were conservative because he calculated the speeds based on a head-on collision as opposed to an angular collision which occurred in this case. (Ex. D, p. 441).  Mr. Ponder testified that if he were to resolve for the actual angle of impact, the speed of petitioner's vehicle at the time of impact and at the beginning where it left the roadway would have been higher (faster).  (*Id.*).  Petitioner could not have been reacting to encroachment by the victim's vehicle into his lane, because given the vehicles' speeds, the treeline, the embankment and the topography, there was "no way" the victim's vehicle would have been in petitioner's sight at the time petitioner began crossing the white line and leaving the roadway.  (Ex. D, pp. 423-424, 442).

A State expert in forensic toxicology, Dr. Bruce Goldberger, testified that he tested the blood drawn from petitioner and found 49 nanograms per milliliter of Alprazolam, commonly known as Xanax, and less than 50 nanograms per milliliter of Temazepam.  (Ex. D, pp. 469-470).  No drugs or alcohol were found in Mr. Williams' blood.  (Ex. D, p. 471).  According to Dr. Goldberger, when one initially takes Xanax, or if one takes too much of it, it makes one sleepy and there may be effects on inhibitions and judgment.  Temazepam is a sleeping pill to be taken at night so that it can lead to fatigue, sedation and the ability to control one's judgment. Taking Xanax and Temazepam together can lead to an enhanced effect.  A single dose of Xanax in someone who is unfamiliar with the drug or not tolerant to it can produce an effect similar to that of alcohol.  Dr. Goldberger was not of the opinion

that either petitioner or his ability to operate a motor vehicle was impaired by the drugs.  Dr. Goldberger could not say with certainty that petitioner was not impaired by the drugs.  (Ex. D, pp. 472-475).  The State presented this "medication evidence" (for lack of a better term) in conjunction with the evidence that petitioner was driving at an excessive rate of speed in a dangerous portion of the roadway to show that petitioner was driving in a willful or wanton disregard for safety.

On cross-examination, Dr. Goldberger testified that tests of the level of concentration of Temazepam do not specify levels below 50, because at levels below 50 the drug does not have any effect on people.  The level of Alprazolam (Xanax) is tested to 5.  A level of 49 falls within the higher side of therapeutic.  The effects of Xanax wear off over time as the dose is maintained.  Dr. Goldberger understood that petitioner had been taking the medication for years.  If someone has been taking Xanax for years, unless he suddenly increases the dosage or stops taking it and then starts again, the person will not feel the same effects as someone who has just taken the medication.  Under normal circumstances, if the drug is taken repetitively on schedule, it will not produce fatigue.  Dr. Goldberger could not say within a reasonable degree of medical certainty that the medication affected petitioner's driving.  (Ex. D, pp. 477-481).

The defense presented three witnesses.  FHP Corporal John Freeman testified that when he observed petitioner at the hospital after the accident, he did not observe any signs of impairment or intoxication.  (Ex. D, pp. 517-519).  Petitioner's mother testified that it took six hours to drive from petitioner's residence to Crestview, Florida, and that petitioner left home between nine and ten on the morning of the accident.  (Ex. D, pp. 520-523).

Petitioner testified that he was on two prescription medications at the time of the accident.  One was a sleeping medication and the other was Xanax which he had

been taking for over ten years.  On the day in question petitioner had 1 milligram of Xanax in the morning before he left.  The Xanax had no effect on his ability to drive. Petitioner testified that he was driving 50 or 55 miles per hour when he passed a truck; that when he got past the truck there were other vehicles in the lane; that he was concerned about getting back into his lane so he accelerated but did not exceed 70 miles per hour; that after he pulled back into his own lane and before he reached the bridge he decelerated; that as he approached the curve he could see a vehicle (Mr. Williams' vehicle) drifting towards his lane so he steered to the right but there was no safe place to go off the road; and that Mr. Williams' vehicle came into petitioner's lane and petitioner thought he was going to hit Williams so he turned into Williams' vehicle.  Petitioner testified that the accident occurred partly on his side of the road (the southbound lane).  (Ex. E, pp. 526-547).  During cross-examination, petitioner admitted that just prior to the crash he had passed three cars at one time.  (Ex. B, p. 548).  Petitioner also agreed that he may have accelerated to 70 miles per hour to pass the vehicles.  (Ex. E, p. 550).

Defense counsel, when testifying at the Rule 3.850 evidentiary hearing, summarized the theory of defense as follows:

> The theory at trial, given the overwhelming weight of the physical evidence that the accident did occur in Mr. Williams' lane of travel, was that Mr. Hicks had been forced to speed up to pass slower moving traffic, and therefore was, in order to get back in his own lane, was forced to go faster than the speed limit, resulting in loss of control, and ultimately the accident, and therefore, it wasn't recklessness.  It was a vain attempt at really defensive driving.

(Ex. N, p. 367).  Defense counsel agreed that the actual cause of the accident was not genuinely disputed:  "[T]he cause of the accident [as determined by all experts, even the defense expert who was not called to testify at trial] was Mr. Hicks driving too fast – excessively fast for conditions around a corner, resulting in loss of control of

his vehicle, resulting in an impact of a vehicle oncoming in the opposite lane of travel[.]" (*Id*., p. 368).

By finding petitioner guilty, the jury found that the State proved beyond a reasonable doubt that the cause of Mr. Williams' death was the operation of a motor vehicle by petitioner, and that petitioner operated the motor vehicle in a reckless manner likely to cause the death of, or great bodily harm to, another person.  (Ex. A, p. 77).

## APPLICABLE LEGAL STANDARDS

Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[2] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner

---

[2]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

"must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).  A claim is also considered procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  *Bailey*, 172 F.3d at 1303.  In the second instance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly

established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice.  *Tower*, 7 F.3d at 210.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death

Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

_____

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the

legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither

an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't*

of Corr., 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

Ineffective Assistance of Trial Counsel Standard

In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner. *Id.*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."

*Strickland* at 690, 104 S. Ct. at 2066. "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted). "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694, 104 S. Ct. at 2068. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792.

## DISCUSSION

Ground One            "Trial Counsel Was Ineffective For Failing To Raise The Issue
                      That The State Committed A Brady Violation See: Brady v.
                      Maryland, 373 U.S. 83 (1963)." (Doc. 1, p. 7).[4]

Petitioner alleges the State destroyed both vehicles involved in the accident before the defense had an opportunity to "inspect and test the vehicles." (Doc. 1, p. 7). Petitioner faults trial counsel for failing to investigate the State's reason for destroying the vehicles, and for failing to object to their destruction. Petitioner claims the state court's ruling on this issue was contrary to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 251 (1963). Respondent asserts petitioner is not entitled to federal habeas relief, because the state postconviction courts' rejection of this

---

[4]References to page numbers of the petition are to those enumerated by the electronic docket.

claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard.  (Doc. 23, pp. 8, 12-13).

Petitioner presented this claim to the state courts as Ground One of his Rule 3.850 motion.  The state circuit court's written order articulated the correct standard, the *Strickland* standard (Ex. M, p. 121), and denied relief as follows:

> **Ground I** – The Defendant first claims that his attorney erred in not raising a <u>Brady</u> objection based on the state's "destruction of material evidence."   The Defendant alleges that the State, after inspecting both vehicles, later destroyed them in bad faith.  To meet the requirements of <u>Brady</u>, a defendant must show that (1) favorable evidence (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced.
>
> The Court finds that this claim must fail because the Defendant cannot show that he was prejudiced by the destruction of either automobile.  Although the Defendant claims such evidence would have been "exculpatory", he has not alleged with any specificity how the evidence would have helped in his defense.  The Defendant's conclusory statement is insufficient to establish prejudice and this clam is denied without the need for an evidentiary hearing.

(Ex. M, pp. 121-22) (footnotes omitted).  The First DCA summarily affirmed without opinion, (Ex. R), thereby leaving the above circuit court judgment as the last reasoned state court decision addressing the merits of petitioner's claim.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

In *Brady*, the Supreme Court held: "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or

bad faith of the prosecution." 373 U.S. at 87, 83 S. Ct. at 1194. The evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L. Ed. 2d 481 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 433-434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995). The standard for materiality under *Brady* is the same as the standard for prejudice under *Strickland*:

> The prejudice component of an ineffective assistance claim and the materiality component of a *Brady* claim both require the same thing: the petitioner must establish that but for the deficient representation or suppression, there is a reasonable probability of a different result in the proceeding. *Compare Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068 *with Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S. Ct. 1555, 1565, 131 L. Ed. 2d 490 (1995). If the failure to use certain evidence does not result in prejudice for ineffective assistance purposes, the suppression of some of that same evidence will not be material for *Brady* purposes.

*Brown v. Head*, 272 F. 3d 1308, 1316 (11th Cir. 2001).

In state court, petitioner supported his claim of prejudice (and materiality) by alleging that expert witness Mr. Hulion took photographs and measurements of the vehicles while they were in the salvage yard and used those measurements to determine how the crash occurred. (Ex. M, pp. 3-4). Petitioner asserted that the State's destruction of the vehicles prevented the defense from "view[ing] and inspect[ing] the condition of the undercarriage of James Williams' five-year-old truck to determine the optimum point of impact based on the deterioration of parts." (Ex. M, p. 4). Petitioner further asserted that had the vehicles been preserved, "the defense would have had the same opportunity as the State to present vital testimony; testimony supporting Defendant's theory of defense that James Williams' truck veered into defendant's southbound lane where the accident occurred." (*Id.*, pp. 4-5).

The state courts reasonably determined that petitioner's conclusory allegations, supported by nothing but petitioner's speculation, failed to show that a defense inspection of Mr. Williams' vehicle probably would have produced evidence showing that the cause of the collision was Mr. Williams' truck encroaching into petitioner's lane.  Crush damage, which is apparently what petitioner is referencing, was a factor used by the experts to determine the <u>speed</u> of the vehicles (*i.e.*, what the vehicles looked like as they were "crushing together at maximum point", (Ex. C. pp. 252-254)), not the movement of the vehicles prior to impact, how the vehicles came together, or the site of impact.  (*Id.*; Ex. D, p. 432).  The experts determined the site of impact primarily from markings and gouges on the roadway, the position of the vehicles on the roadway, and remnants (including charcoal dust) and markings left by the "carbon box" or "charcoal canister" of Mr. Williams' truck (part of the filtration system located underneath the vehicle) which exploded upon impact.  (Ex. C, pp. 226, 230-246, 324-326).  Petitioner's allegations do not establish a reasonable probability that a defense inspection of Mr. Williams' vehicle would have produced measurements or observations different from Mr. Hulion's inspection, measurements, observations, or photographs, much less evidence impeaching the experts' opinions or supporting petitioner's defense.  More importantly, petitioner wholly fails to allege facts suggesting a reasonable probability that a defense inspection would have produced evidence sufficient to change the jury's verdict.

The state courts' rejection of petitioner's claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground One.[5]

---

[5]Although the Rule 3.850 evidentiary hearing occurred <u>after</u> the state court summarily denied relief on Ground One, the evidence adduced at the Rule 3.850 evidentiary hearing reinforces that

Ground Two          "The Trial Court Erred In Its Denial Of The Defendant's 'Motion
                    In Limine' To Prohibit Evidence And Comments Regarding
                    Medication:  This Issue Was Preserved On The Direct Appeal."
                    (Doc. 1, p. 8).

Petitioner claims the trial court violated his "right to a fair trial and due process" when it denied his motion in limine to prohibit evidence and argument of his use of Xanax and Temazepam.  Petitioner argues the evidence was irrelevant because intoxication or impairment is not an element of vehicular homicide.  Petitioner asserts the State's proffered reason for offering the evidence – to show that petitioner's knowing use of the drugs before driving was one factor, among others, tending to show  petitioner drove in a reckless manner – was pretext and that the State's true purpose was "to mislead the jury into believing, or speculating that the defendant took his medication in order to drive to Florida high on drugs."  (Doc. 1, p. 8).  Petitioner complains that by allowing the evidence, the trial court "allowed the jury to be misled."  (*Id.*, p. 9).

---

petitioner's claim is wholly without merit.  Trial Counsel Scott Miller testified at the Rule 3.850 evidentiary hearing that petitioner's vehicle was <u>not</u> destroyed prior to the defense expert's (Dr. Sparks) having an opportunity to inspect it (Ex. N, p. 341), yet Dr. Sparks came to the same conclusions as the State's experts – that petitioner's vehicle collided with Mr. Williams' vehicle on Mr. Williams' side of the road and that the cause of the crash was petitioner's losing control of his vehicle due to excessive speed.  (Ex. N, p. 247 (Sparks' report discussed *infra*); *see also* Ex. M, p. 22 (Letter from Trial Counsel Miller to petitioner dtd. 7/19/07 informing petitioner that all three experts – FHP (Mr. Hulion), S.E.R.F (Dr. Sparks) and the State's expert from Tallahassee (Mr. Ponder) all came to the same conclusions)).  Although defense counsel Miller could not remember whether the victim's vehicle was destroyed prior to a defense inspection (Ex. N, p. 341), defense counsel testified that Dr. Sparks was able to get any information about that vehicle from Mr. Hulion's report.  (Ex. N, p. 356).  Attorney Miller testified that no one questioned the accuracy of the data in Mr. Hulion's report.  (*Id.*).  Further, Dr. Sparks' May 10, 2007 report makes not so much as a suggestion that his opinion required (or was based on) a personal inspection of the vehicles; that Sparks requested and was denied the opportunity to inspect Mr. Williams' vehicle; or that the measurements, information and photographs Sparks was provided were insufficient to form an accurate opinion as to how the collision occurred, why it occurred and the site of impact.

The parties do not dispute that petitioner raised this claim on direct appeal. (Doc. 23, p. 14).  Respondent asserts petitioner is not entitled to federal habeas relief, because he cannot establish the First DCA's decision was contrary to or an unreasonable application of Supreme Court precedent.  (Doc. 23, pp. 13-18).

The trial court ruled on petitioner's motion in limine as follows:

THE COURT:  All right.  This is the way I see this.  I'm going to grant and deny, if it makes sense.  I think there's a reasonable limit on the amount of such testimony that you can elicit in this trial.  This trial is not going to be a trial as if this was a charge of DUI.

Clearly, however, you know, every one of those drugs has a little label on it that say[s], use caution when operating machinery, may cause drowsiness, so on and so forth.  I think it does rationally go to the question of recklessness or wantonness.  But it's not going to become a trial where it's a trial where he was so stoned he shouldn't have been driving, because that's not what he has been charged with.

Now, how y'all work that out, I'm not sure.  But at some point I'm going to say you've got to collapse that testimony.  Can't any more come in.  But I think clearly consumption of any drug, even if it is under a lawful limit, can be evidence of recklessness.  I think the law is clear on that.

You're going to have to do it in a way that's not intended to inflame or prejudice this jury just because of the consumption of the drugs in question.  Now, y'all have lived with this case.  You know exactly what evidence you have and what testimony you expect to elicit and obviously Mr. Miller [defense counsel] does, too.  Y'all need to work that out together.

If we need a cautionary instruction, then I'll do that as well, if y'all can agree to what the contents of it is.  I hope you understand where I'm coming from.  Mr. Love [prosecutor] and Mr. Miller, do you understand what I'm saying?

MR. MILLER:  Yes, sir, I do. . . .

(Doc. 23, Ex. B, pp. 22-24).   The First DCA affirmed the trial court's decision without explanation.  (Ex. K).

The issue here is not the admissibility of the medication evidence under state law.  Federal habeas relief is not available for violations of state law.  28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed. 2d 385 (1991) (holding that errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief; "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")

Nor is the issue whether the United States Constitution prohibited admission of the medication evidence.  Under the AEDPA, this court will review only whether the state courts' rejection of the constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412, 120 S. Ct. at 1523.  No decision of the Supreme Court establishes that admitting the medication evidence in this case was unconstitutional. Similarly, the Supreme Court has never held that a prosecutor's comments during closing arguments were so unfair as to violate the right of a defendant to due process.[6]

---

[6]Consistent with this court's research, petitioner has not identified – in either his counseled direct appeal briefs (Ex. F, pp. 14-26; Ex. J), or his pleadings before this court (docs. 1, 32) – any Supreme Court case clearly establishing that admitting the medication evidence in this case was

"The Supreme Court has reiterated, time and again, that, in the absence of a clear answer – that is, a holding by the Supreme Court – about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law."  *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1287-88 (11th Cir. 2012); *Wright v. Van Patten*, 552 U.S. 120, 126, 128 S. Ct. 743, 747, 169 L. Ed. 2d 583 (2008) ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonably applied clearly established federal law.") (internal quotation marks omitted); *Schriro v. Landrigan*, 550 U.S. 465, 478, 127 S. Ct. 1933, 1942, 167 L. Ed. 2d 836 (2007) (holding that the Arizona Supreme Court did not unreasonably apply federal law, because the United States Supreme court "ha[s] never addressed a situation like this."); *Carey v. Musladin*, 549 U.S. 70, 77, 127 S. Ct. 649, 654, 166 L. Ed. 2d 482 (2006) ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here," the denial of relief by the California Court of Appeal "was not contrary to or an unreasonable application of clearly established federal law.").

The state courts' rejection of petitioner's constitutional claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Petitioner is not entitled to federal habeas relief on Ground Two.

---

unconstitutional, or that the prosecutor's comments/arguments were so unfair as to violate due process.

Ground Three          "The State Argued Impermissible Conclusions Regarding
                      Petitioner's Medication."  (Doc. 1, p. 10).

Petitioner claims the State argued impermissible conclusions regarding his medication.  (Doc. 1, pp. 10-11).  Respondent asserts this claim is unexhausted and procedurally defaulted.  (Doc. 23, pp. 18-23).  Petitioner's reply concedes that Ground Three is unexhausted and procedurally defaulted, and does not argue any basis to excuse the procedural default.  (Doc. 32, p. 10).  Petitioner's procedural default bars federal habeas review of Ground Three.

Ground Four           "Trial Counsel Was Ineffective For Agreeing To Allow The Jury
                      To Hear A Redacted Statement Made By The Petitioner In
                      Relation To His Remorse In Violation Of The Rule Of
                      Completeness."  (Doc. 1, p. 12).

Petitioner claims trial counsel was ineffective for agreeing to allow the jury to hear a statement he (petitioner) made with his statements of remorse redacted.  (Doc. 1, p. 12).  Respondent asserts petitioner is not entitled to federal habeas relief, because the state postconviction courts' rejection of this claim was not contrary to and did not involve an unreasonable application of *Strickland*.  (Doc. 23, pp. 23-25).  Petitioner's reply concedes that respondent is correct.  (Doc. 32, p. 11).  This court should deny federal habeas relief on this claim due to petitioner's abandonment.

Ground Five           "The Court Erred In Its Denial Of The Motion For A Mis-Trial
                      After The Denial Of Motion In Limine When The State Failed To
                      Prove 'Recklessness' By Intoxication And Is Subject To An
                      Abuse Of Discretion Standard Of Review:  Goldwin v. State, 751
                      So.2d 537, 546 (Fla. 2000); Cole v. State, 701 So.2d 845, 853
                      (Fla. 1997), cert. denied 523 U.S. 1051:  Depriving Defendant Of
                      The Right To A Fair Trial, And Due Process."  (Doc. 1, p. 13).

Petitioner claims the trial court deprived him of a fair trial and due process when it denied his motion for a mistrial.  (Doc. 1, p. 13).  This claim involves the State's eliciting the following testimony from Dr. Goldberger:

Q [Prosecutor]:  You talked about the side effects of Xanax in general.
Does it matter how much Xanax you take in order to have these side
effects present?

A [Dr. Goldberger]:  A single dose of Xanax in someone who is
unfamiliar or not tolerant to the drug, it can produce effects very similar
to alcohol.  So it can impair cognition, that's thought processes.  And it
can also impair psychomotor performance, that's essentially
coordination, ability to walk and talk.

Q:  You're not here to testify that Mr. Hicks was impaired or his ability
to operate a motor vehicle was impaired based on these drugs; are you?

A:  That's correct.

Q:  But at the same time can you say with any certainty that he was not
impaired by these drugs?

A:  No.

(Ex. D, p. 474).  Defense counsel made no objection to any particular question or

testimony.  On cross-examination, defense counsel asked:

Q [Defense Counsel]:  Can you say beyond a reasonable doubt whether
this medication was effecting [sic] his driving?

A [Dr. Goldberger]:  No.

Q:  So you're just saying it's possible?

A:  Yes.

Q:  But that would call for some speculation about some other factors;
wouldn't it?

A:  Yes.

(Ex. D, p. 481).  Only after defense counsel finished cross-examination and the State

redirected and rested its case did defense counsel ask for a mistrial:

MR. MILLER [Defense counsel]:  Your Honor, at this time we would move for a mistrial.  I submit that the State has effectively turned this case into a DUI case, with which the defendant is not charged, by the testimony of Dr. Goldberger to say – basically testify to what he said even though he can't say within a reasonable degree of medical certainty whether it had any affect [sic].  I think that bell has been rung and it can't be unrung.  We'd move for a mistrial at this time.

THE COURT:  I see you have a large packet of law with you.  Do you have some law to support your position in this case?

MR. MILLER:  Not on that issue, your Honor.

THE COURT:  Any argument from you, Mr. Love, on the motion for mistrial?

MR. LOVE [Prosecutor]:  Judge, I think we had this as a pretrial motion and I did not exceed any of the parameters that were placed on this.  I simply asked him would this drug cause someone to have a lack of awareness or a freedom of their inhibitions.  That's all he talked about.

The issue of impairment came up when Mr. Miller asked him – I think I asked him, you're not here to testify he was impaired.  I'm not sure the jury understood that.  Then I asked him, but you can't say with certainty that he wasn't impaired by this?

You know, that's exactly what the Court said we could do.  We couldn't come in here and say this guy was doped up on drugs and he's charged with vehicle homicide.  We're going to argue to the jury that his reckless act started when he took this drug.

The first act he did that was reckless was taking this and operating a motor vehicle because he knows the effects of that drug.  And that's what Dr. Goldberger said was that, yeah, this drug can cause a lack of awareness, diminished capacity.  And consistent with that would be someone that runs off the road, that's a lack of awareness of what's going on.

THE COURT:  Any rebuttal argument?

Case 3:12-cv-00473-LC-CJK   Document 34   Filed 12/16/14   Page 28 of 47

Page 28 of 47

MR. MILLER:  I think where he crossed the line was with the question, can you say that he wasn't?  At that point it kind of raised the specter. They have a burden of proving he did.  By putting that out there, it basically turns into a DUI thing.  Now we've got to try to defend this issue.

MR. LOVE:  I think Mr. Miller asked him the question, you can't say with medical certainty whether or not this drug had an effect on him and he answered yes.

THE COURT:  I'll deny the motion for mistrial. . . .

(Ex. D, pp. 485-487).

On direct appeal, petitioner raised the following issue as Issue II:  "THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR MISTRIAL."  (Ex. F, pp. 13, 27-31).  Petitioner argued that the testimony of Dr. Goldberger improperly shifted the burden to petitioner to prove he was not impaired by the medication, in violation of due process.  (*See* Ex. F, pp. 27-28).  The State argued that the issue was not properly preserved, because defense counsel did not make a contemporaneous objection and in fact highlighted the issue by asking Dr. Goldberger whether he could say with medical certainty whether or not petitioner's medication affected his driving.  (Ex. I, pp. 16-20).  The State argued alternatively that the trial court did not abuse its discretion in denying the motion for mistrial.  (*Id*., pp. 20-21).  The First DCA summarily affirmed without explanation.  (Ex. K).

Respondent asserts petitioner's present due process claim is procedurally defaulted, because petitioner "did not base his objection at trial on a denial of a constitutional due process right and did not raise a federal constitutional issue on direct appeal."  (Doc. 23, pp. 25-26 (*citing* Ex. D, pp. 485-487; Ex. F, pp. 27-31)). Respondent asserts the alternative procedural default argument that the First DCA rejected the claim on an independent and adequate state law procedural ground

Case No: 3:12cv473/LC/CJK

(defense counsel's failure to preserve the issue by contemporaneous objection), thereby precluding federal habeas review.  (Doc. 23, pp. 26-30).

Even if the court resolved the procedural default issue in petitioner's favor by finding that petitioner fairly presented, and the First DCA rejected on the merits, petitioner's due process challenge to the denial of a mistrial arising from Dr. Goldberger's testimony on impairment, petitioner's claim fails for the reasons Ground Two failed (concerning admission of the "medication evidence" through Dr. Goldberger's testimony).  *See supra* Ground Two.  No decision of the Supreme Court establishes that the type of testimony allowed here, when viewed in the context of all of the evidence admitted in this case, was unconstitutional.

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Petitioner is not entitled to federal habeas relief on Ground Five.

Ground Six          "The Trial Court Erred In Denying The Petitioner's Motion For
                    Judgment Of Acquittal, And His Renewed Motion For Judgment
                    Of Acquittal, In Violation Of His Constitutional Right To A Fair
                    Trial."  (Doc. 1, p. 14).

Petitioner claims the trial court erred in denying his motion for judgment of acquittal.  Respondent asserts this claim is unexhausted and procedurally defaulted. (Doc. 23, pp. 30-31).  Petitioner's reply concedes that Ground Six is unexhausted and procedurally defaulted, and does not argue any basis to excuse the procedural default. (Doc. 32, p. 10).  Petitioner's procedural default bars federal habeas review of Ground Six.

Ground Seven        "The Trial Court Erred In Denying The Petitioner's Request For A Special Jury Instruction After It's [sic] Denial Of The Defendant's Renewed Request For Acquittal, That:  Excessive Speed Coupled With Intoxication Does Not Constitute As [sic] Reckless Disregard For Life."  (Doc. 1, p. 16).

Petitioner claims the trial court erred in denying his request for a special jury instruction.  Respondent asserts this claim is unexhausted and procedurally defaulted. (Doc. 23, p. 32).  Petitioner's reply concedes that Ground Seven is unexhausted and procedurally defaulted, and does not argue any basis to excuse the procedural default. (Doc. 32, p. 10).  Petitioner's procedural default bars federal habeas review of Ground Seven.

Ground Eight        "Counsel Was Ineffective For Failing To Impeach The State's Expert Witness."  (Doc. 1, p. 18).

Petitioner claims trial counsel was ineffective for failing to impeach Mr. Hulion's testimony that there was no evidence the collision occurred in the southbound lane.  Petitioner asserts counsel should have  "adduc[ed] evidence that the basis for [Hulion's] testimony was flawed and thus invalid."  (Doc. 1, p. 18). Petitioner identifies the following evidence counsel should have used to impeach Hulion:  (1) Mr. Lindley's trial testimony that there was collision debris in both lanes, and (2) Stacy Joy's proposed testimony that she was one of the first people on the scene after the accident occurred, that she was driving in the southbound lane, and that there was a large debris field in the southbound lane. (*Id*.).

Respondent asserts petitioner is not entitled to federal habeas relief, because the state postconviction courts' rejection of this claim was not contrary to and did not involve an unreasonable application of *Strickland*.  (Doc. 23, pp. 32-34).

Petitioner presented this claim to the state courts as Ground Three of his Rule 3.850 motion.  The state circuit court's written order articulated the *Strickland* standard (Ex. M, p. 121), and denied relief as follows:

**Ground III** – The Defendant next alleges that his trial attorney erred in failing to conduct an adequate cross-examination of expert witness Michael Hulion.  Mr. Hulion testified that he was a traffic homicide investigator and had investigated "thousands" of automobile accidents.  After hearing his qualifications, the Court allowed the witness to testify as an expert in accident and crash reconstruction.

Mr. Hulion testified that he had investigated the crash on Highway 85 in Okaloosa county involving the Defendant.  The road, which had a speed limit of 45 miles per hour, was described as having two lanes with double solid lines indicating no passing.  When he arrived at the scene he saw the Defendant's Impala and the victim's vehicle on the east shoulder of the road.  Both vehicles had extensive damage.

After conducting his investigation, Mr. Hulion said that it was his opinion that the Defendant was traveling 78 miles an hour heading south when he crossed the center line and struck the victim's vehicle in the northbound lane.  When asked if there was any evidence that the accident had actually occurred in the southbound lane, Mr. Hulion said "none."

The Defendant insists that the conclusion of Mr. Hulion was incorrect and that the victim struck his car.  He points to the fact that there was debris on both sides of the road in support of his claim.  The fact that there was debris in both lanes does not render Mr. Hulion's expert opinion that the accident occurred in the northbound lane unreliable.  This claim, since the Court can find no prejudice, is denied without the need for an evidentiary hearing.

(Ex. M, pp. 122-23) (footnotes omitted).  The First DCA summarily affirmed without opinion, (Ex. R), thereby leaving the above circuit court judgment as the last reasoned state court decision addressing the merits of petitioner's claim.  *Ylst, supra*.

The state courts reasonably determined petitioner failed to establish prejudice under *Strickland*.  First, Mr. Hulion did not testify there was no debris in the southbound lane; he testified there was no evidence the cars collided (*i.e.*, the impact

occurred) in the southbound lane. (Ex. C, pp. 239-240). Mr. Hulion's testimony was corroborated by the other expert, Mr. Ponder, who also testified there was no "impact evidence" in the southbound lane.  (Ex. D p. 422).  Second, Mr. Hulion in fact testified that there was debris in both lanes as well as on the east and west shoulders of the roadway.  (Ex. C, pp. 242-243).  Thus, evidence that there was debris on both sides of the roadway was not inconsistent with, and would not have impeached Mr. Hulion's testimony.

Third, defense counsel thoroughly cross-examined Mr. Hulion as to how he reached his conclusions concerning the site of impact, including how the location of debris factored into his analysis. (Ex. C, pp. 307-334). Mr. Hulion reached his conclusion about the site of impact primarily from analyzing the "yaw marks, skid marks, gouge marks, and scrape marks" the two vehicles made on the roadway and shoulders, as well as residue on the roadway from the explosion, upon impact, of the carbon box underneath the victim's vehicle. (Ex. C, pp. 224-252, 307-326). The debris field was not the primary basis for Hulion's opinion concerning the site of impact. (Ex. C ,pp. 307-313, 324-325). Petitioner has not established a reasonable probability of a different outcome had defense counsel attempted to impeach Mr. Hulion's testimony with further questioning about the location of debris.

The state courts' rejection of petitioner's claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Eight.

<u>Ground Nine</u>      <u>"Counsel Was Ineffective For Failing To Call Expert Witness Jack Sparks."</u>  (Doc. 1, p. 20).

Petitioner alleges the following in support of this claim:

The defense employed Jack Sparks as an expert accident reconstruction specialist. In his reports, Jack Sparks questioned whether

the state could prove one of the elements of the crime and further stated that the victim's vehicle could have been speeding at the time of the accident.  Counsel for petitioner possessed these reports but refused to call Jack Sparks as an expert witness.  Petitioner was prejudiced by the exclusion of this witness since his testimony would have directly conflicted with the state's expert witnesses.

(Doc. 1, p. 20).  Respondent asserts petitioner is not entitled to federal habeas relief, because the state postconviction courts' rejection of this claim was not contrary to and did not involve an unreasonable application of *Strickland*.  (Doc. 23, pp. 34-37).

Petitioner presented this claim to the state courts as Ground Eight of his Rule 3.850 motion.  The state circuit court held an evidentiary hearing on the claim (Ex. N, pp. 245-246 and 300-406), and denied relief in a written order (Ex. N, pp. 281-284).  The court's written order articulated the *Strickland* standard (Ex. N, p. 281), and denied relief as follows:

> **Ground VIII** – The Defendant claims that trial counsel, Scott Miller, should have called witness Jack Sparks to testify on his behalf.  At the evidentiary hearing, Mr. Miller said that he had hired Dr. Sparks to reconstruct the accident but decided against calling him as a witness.  When asked why he did not call him to testify, Mr. Miller said that Dr. Spars' conclusion was that the Defendant was at fault and that his testimony would not have been helpful.
>
> A report prepared by Dr. Sparks was introduced into evidence at the hearing and shown to Mr. Miller.  In the report, Dr. Sparks wrote that "the speed of the Hicks vehicle and lack of control by the driver" led to the crash.  Dr. Sparks also wrote that, contrary to the Defendant's assertion, the wreck occurred in the victim's lane of travel.  Dr. Sparks added that it was his belief that the wreck was an "accident."
>
> The Defendant was charged with vehicular homicide, a violation of section 782.071(1)(a) Florida Statutes.  As noted at the evidentiary hearing, the offense does not require that a defendant intend to cause the death of another.  The standard, rather, is whether a defendant acted in a "reckless" manner likely to cause the death of another.

The Court initially finds that the decision not to call Dr. Sparks was a reasonable strategic decision which cannot serve as the basis for a Rule 3.850 claim.  The Court also finds that there is no evidence that Dr. Sparks could have provided any testimony that would have benefitted the Defendant to such an extent that the outcome of the proceeding would have been different.

In his report, Dr. Sparks wrote that the Defendant's speed caused him to lose control of the vehicle and crash into the victim's car by swerving into his lane.  Although Dr. Sparks, in a letter to the Defendant, wrote that he did not believe he had committed the charged offense, his own conclusions contradicted this statement.  This claim, accordingly, is denied.

(Ex. N, pp. 281-82) (footnote omitted).  The First DCA summarily affirmed without opinion, (Ex. R), thereby leaving the above circuit court judgment as the last reasoned state court decision addressing the merits of petitioner's claim.  *Ylst, supra.*

The state court's findings of fact are amply supported by the record.  Dr. Sparks' report, dated May 10, 2007, states in relevant part:

Our office has reviewed the subject case as to who caused the accident and what caused the loss of control of Mr. Tommy Hicks' vehicle.

Our findings are that the speed of the Hicks vehicle and lack of control by the driver caused the vehicle to yaw into the curve.  This resulted in Mr. Hicks losing control of this vehicle running off the roadway, over steering across into the oncoming lane of travel.  The impact of the vehicles was in the victim's lane of travel.

We found no intent on the part of Mr. Hicks and attribute the cause to his misjudgment of his speed and the curvature of the roadway.

(Ex. N, p. 247).  Attached to Sparks' report was his supporting documentation.  (Ex. N, pp. 248-253).  Dr. Sparks' letter to petitioner, dated September 6, 2007, states in relevant part:

As you may recall from my last letter we were very careful not to state all of our findings so we would not further prejudice your case.

A fact that may help you is the unknown speed of the pickup truck [Mr. Williams' vehicle] which has not [been] determined.  The crush of both vehicles is a composite of both vehicles.  This means the truck could have been exceeding the speed limit.

The off road evidence demonstrates your vehicle's path by the off road tire marks and your loss of control of the vehicle.

1) The loss of control of your vehicle is an accident
2) The guard rail required you to steer back on the highway as the curve dictated
3) Your control of your vehicle was further compromised by the guardrail and the smaller radius of the curve
4) The initiation of loss of control was exceeding the speed limit
5) Your speed at the guardrail does not appear to be malicious

I have included court hearings and findings for your review.

Look at 7.9 item 3.  "the State must prove the following three elements beyond a reasonable doubt:

"3.  operated the vehicle in a reckless manner likely to cause the death or great bodily harm to another person".

This has not been shown to be the case.

(Ex. N, p. 254).

Trial counsel Scott Miller testified that he did not call Dr. Sparks to testify "because he [Sparks] said it was Mr. Hicks' fault.  He basically agreed with trooper Hulion's work about the case."  (Ex. N, p. 344).  Mr. Miller did not see how Dr. Sparks' testimony could be considered exculpatory or favorable to the defense.  (Ex. N, p. 344, 351, 354-55).  Even in light of the statements Dr. Sparks made in his letter

to petitioner, which Miller reviewed prior to trial, Miller did not believe Dr. Sparks could offer any relevant, admissible exculpatory testimony.  (Ex. N, pp. 370-71). Counsel knew Sparks' statements – that petitioner lacked intent, that petitioner's loss of control was an accident, and that the State had not shown recklessness – were inadmissible because they were irrelevant legal opinions beyond Sparks' expertise. (Ex. N, p. 367-369).  Even if admitted, any benefit of the proposed testimony was far outweighed by the inculpatory information Sparks would have provided – "basically verify[ing] everything that the State's expert said."  (Ex. N, p. 351, 357, 368). Further, to the extent Sparks speculated that the victim's vehicle may have been exceeding the speed limit, Attorney Miller testified that he considered it "neither here nor there," because the evidence established the speed of petitioner's vehicle. (Ex. N, p. 369).  Attorney Miller emphasized at the Rule 3.850 hearing that the September 6, 2007 letter from Dr. Sparks to petitioner was the second letter Sparks' had prepared.  Defense counsel explained:

> A [SCOTT MILLER]:  . . . What happened was after we got the report back, Mr. Hicks took it on himself to write to SERF, and the first letter basically confirmed what the report said, and that SERF was sorry that they couldn't help.

> Mr. Hicks wrote back again, explained the situation.  I think Dr. Sparks, in an effort to placate Mr. Hicks, basically said, you know, buck up, maybe you got a chance at trial, and that's basically the substance of the second letter.

(Ex. N, p. 356).  Petitioner did not call Dr. Sparks to testify at the postconviction evidentiary hearing.  (*See* Ex. N, p. 364).

Based on the state circuit court's findings, the state courts concluded, reasonably, that Attorney Miller's failure to call Dr. Sparks was an informed, reasonable strategic decision, and that counsel's failure to call Sparks did not undermine confidence in the outcome of petitioner's trial.  Nothing about these

conclusions is inconsistent with Supreme Court precedent, or otherwise objectively unreasonable.   The state courts' conclusions are supported by the record and *Strickland* itself.  *See Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. . . .").

The state courts' rejection of petitioner's claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Nine.

Ground Ten          "Counsel Was Ineffective For Failing To Call 'Stacy Joy' As A Defense Witness.  Counsel's Failure Violated Defendant's Sixth Amendment Right To The U.S. Constitution."  (Doc. 1, p. 21).

Petitioner faults trial counsel for failing to call Stacy Joy as a trial witness. Petitioner alleges that Ms. Joy was identified in the police report and was the first person on the scene.  Petitioner claims Ms. Joy's testimony would have supported petitioner's testimony that the vehicles collided on petitioner's side of the road. (Doc. 1, p. 21).  Petitioner argues that Ms. Joy's testimony, combined with Mr. Lindley's trial testimony where he said that he and three others "moved debris from the southbound lane before the FHP took any pictures" supports a conclusion that had the jury heard Ms. Joy's testimony, "[t]he verdict <u>could</u> have been different."  (*Id.*) (emphasis added).

Respondent asserts petitioner is not entitled to federal habeas relief, because the state postconviction courts' rejection of this claim was not contrary to and did not involve an unreasonable application of *Strickland*.  (Doc. 23, pp. 37-38).

Petitioner presented this claim to the state courts as Ground Four of his Rule 3.850 motion.  The state circuit court's written order articulated the *Strickland* standard (Ex. M, p. 121), and denied relief as follows:

**Ground IV** – The Defendant claims that counsel erred in failing to call witness Stacey Joy on his behalf. Ms. Joy, according to the Defendant, could have testified that she was driving in the southbound lane immediately following the accident and "that there was a large field of debris" in the south lane.

The Defendant does not allege that Ms. Joy witnessed the accident or could have testified as to which vehicle crashed into the other. Since Ms. Joy was not an expert and did not witness the accident, her testimony about where the accident occurred would have been speculative and not have altered the outcome of the proceeding. Since the Defendant cannot show that he was prejudiced by counsel's failure to call Ms. Joy as a witness, this ground is denied without the need for an evidentiary hearing.

(Ex. M, pp. 123-24). The First DCA summarily affirmed without opinion, (Ex. R), thereby leaving the above circuit court judgment as the last reasoned state court decision addressing the merits of petitioner's claim. *Ylst, supra.*

The state courts reasonably concluded that petitioner failed to establish a reasonable probability Ms. Joy's proposed testimony would have changed the outcome of the trial. Although not mentioned by the state circuit court, Ms. Joy's proposed testimony concerning the debris field was cumulative to Mr. Lindley's testimony. Defense counsel elicited testimony from Mr. Lindley that there was a lot of debris on the roadway, that it was on both sides of the roadway, and that Mr. Lindley helped remove some of the debris out of the roadway for the safety of other vehicles. (Ex. B, pp. 191-193). This is precisely the substance of Ms. Joy's proposed testimony. Further, regardless of the fact that there was debris all over the roadway including the southbound lane, Mr. Lindley also testified, on re-direct, that in addition to the debris, he also saw markings on the roadway which indicated, consistent with Mr. Hulion's testimony, that petitioner's vehicle "slid to the right" of the southbound lane and then "overcorrected to come across to the oncoming traffic." (Ex. B, pp.

194-95).   As discussed in Ground Eight above, testimony that the debris field extended to the southbound lane did not impeach Mr. Hulion's testimony or add such "credence" (doc. 32, p. 14) to petitioner's theory  as to change the jury's verdict.

The state courts' rejection of petitioner's claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Ten.

<u>Ground Eleven</u>     "<u>Counsel Was Ineffective For Failing To Object To The State's Improper Or Prejudicial Acts.</u>"  (Doc. 1, p. 22).

Petitioner faults trial counsel for failing to object to the following five statements by the prosecutor during closing argument:

1. "That's why he's guilty of vehicular homicide."  (T. T. p. 606)

2. "It was [the defendant's] acts that caused the death of James Williams."  (T. T. p. 596)

3. "It's not about Tommy Hicks intentionally killing James Williams.  That's not an element the state must prove."  (T. T. p. 594)

4. "[Tommy Hicks] made [his] statement three weeks after the crash, plenty of time for him to contemplate what he's going to tell this trooper about this crash."  (T. T. p. 603)

5. "Ladies and gentlemen, don't check your common sense."  (T. T. p. 507)

(Doc. 1, p. 22).  Petitioner argues these remarks are "improper" (*id*.), but does not explain why.

Respondent asserts petitioner is not entitled to federal habeas relief, because the state postconviction courts' rejection of this claim was not contrary to and did not involve an unreasonable application of *Strickland*.  (Doc. 23, pp. 39-40).  Petitioner's

reply concedes that respondent is correct.  (Doc. 32, p. 16).  This court should deny federal habeas relief on this claim due to petitioner's abandonment.

<u>Ground Twelve</u>     <u>"Counsel Was Ineffective For Failing To Impeach Perry Ponder, An Expert Witness For The State."</u>  (Doc. 1, p. 24).

Petitioner claims trial counsel was ineffective for failing to "object to" or impeach Mr. Ponder's "crush damage" analysis of the vehicles on the grounds that Ponder's analysis was based on new vehicles, not used vehicles similar to petitioner's and Mr. Williams' vehicles.  Respondent asserts this claim is procedurally barred, because the state courts rejected the claim as facially insufficient.  (Doc. 23, pp. 40-42).

Petitioner presented this claim to the state courts as Ground Nine of his Rule 3.850 motion.  The state circuit court's written order articulated the *Strickland* standard (Ex. M, p. 121), and denied relief as follows:

> **Ground IX** – The Defendant alleges that his trial attorney failed to adequately cross-examine witness Perry Ponder.  Specifically, the Defendant clams that Mr. Ponder's analysis of the crash was flawed and that counsel "failed to impeach [his] use of new vehicle specifications when the vehicles in question were [a] five year old truck and [a] nine year old car."
>
> Prior to being qualified as an expert, Mr. Ponder testified as to his experience in the field of accident reconstruction.  Mr. Ponder had a mechanical engineering degree from Florida State and had been reconstructing accidents since 1998.  He added that he had been certified in accident reconstruction and had testified as an expert in four previous trials.  The Court found that, based on his training and background, Mr. Ponder could testify as an expert and offer opinion evidence with respect to the crash.
>
> Mr. Ponder said it was his opinion that the Defendant's vehicle was traveling at a speed of 92 miles per hour when it began leaving skid marks.  At the time of impact, Mr. Ponder said the Defendant was traveling 51 miles per hour.  In arriving at his conclusions with respect

to the two damaged vehicles, Mr. Ponder said he obtains the specifications of an undamaged vehicle.

The Defendant writes that "[h]ad Mr. Ponder's analysis been conducted with similarly situated vehicles to the ones in question, his opinion would have supported defendant's version of where and how impact occurred."   There is, however, no basis to support the Defendant's claim that Mr. Ponder's analysis would have been different other than the Defendant's conclusory statements.   This claim, accordingly, is denied as facially insufficient.

(Ex. M, pp. 125-26) (alterations in original) (footnote omitted).   The First DCA summarily affirmed without opinion.  (Ex. R).

Respondent's procedural default defense should be rejected. When a state court denies a claim an "insufficiently pled" or "facially insufficient", that is a rejection of the claim on the merits, not a ruling that the claim is procedurally barred.   *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 913 (11th Cir. 2009) (rejecting State's procedural default argument; holding that Florida Supreme Court's rejection of petitioner's ineffective assistance claim because petitioner failed to identify any specific evidence in the record supporting it, constituted a ruling on the merits and was not a procedural bar ruling); *see also, e.g., Borden v. Allen*, 646 F.3d 785, 812-16 (11th Cir. 2011) (holding that Georgia state courts' consideration of the facial sufficiency of petitioner's ineffective assistance claims raised in postconviction motion necessarily entailed a determination of the merits of the underlying claims and was not an imposition of a procedural bar).  Petitioner will enjoy merits review of his claim under the AEDPA's deferential standard.

The state circuit court's findings of fact are amply supported by the record and are presumed correct, and the courts' legal conclusions are a reasonable application of *Strickland*.  Petitioner's assertion that Ponder's use of used-vehicle as opposed to new-vehicle specifications/values would have caused Ponder to conclude that the

collision occurred in petitioner's lane due to the victim's encroachment into that lane is wholly speculative, conclusory, and unsupported by any specific, credible facts.

Furthermore, although not mentioned by the state courts, defense counsel <u>did</u> attempt to impeach Mr. Ponder's analysis on this very issue.  (Ex. D, pp. 431-432). There is no record support for petitioner's assertion that cross-examining Mr. Ponder further concerning his use of new, instead of used, vehicle specifications in his crush damage analysis could have supported petitioner's version "of where and how the impact occurred."  (Doc. 1, p. 24; Ex. M, p. 16).  As explained in Ground One, crush damage assisted in determining the speed of the vehicles at the time of impact (and, when analyzed with markings on the roadway, the speed of petitioner's vehicle prior to impact), not where or how the vehicles first came into contact with one another. (*See* Ex. D, pp. 418-20, 432 (Ponder's testimony); Ex. C, pp. 253-254 (Hulion's testimony)).

The state courts' rejection of petitioner's claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Twelve.

<u>Ground Thirteen</u>    "Counsel Was Ineffective For Failing To Object To The Introduction Of Pictures Which Were Prejudicial And Did Not Accurately Depict The Accident Scene."  (Doc. 1, p. 25).

Petitioner faults defense counsel for failing to object to admission of Mr. Hulion's photographs of the crash site on the grounds that Hulion did not arrive at the site until after the scene had been partially cleared of debris and, therefore, his photographs "did not accurately represent the crash site."  (Doc. 1, p. 25).

Respondent asserts petitioner is not entitled to federal habeas relief, because the state postconviction courts' rejection of this claim was not contrary to and did not involve an unreasonable application of *Strickland*.  (Doc. 23, pp. 42-43).

Petitioner presented this claim to the state courts as Ground Four of his Rule 3.850 motion.   The state circuit court's written order articulated the *Strickland* standard (Ex. M, p. 121), and denied relief as follows:

> **Ground VI** – The Defendant argues that his attorney erred by not objecting to pictures of the accident scene being entered into evidence. According to the Defendant, the "pictures did not accurately depict the accident scene and were therefore prejudicial." Mr. Hulion testified that he used the pictures he had taken to assist him in forming his conclusion that the Defendant had swerved from his lane and crashed into the victim. The photographs, since they were probative of the ultimate issue and not unduly prejudicial, were properly admitted into evidence. Although the Defendant disputes their accuracy, his opinion would not serve as a lawful basis to prevent their admissibility [sic]. Since the photographs were relevant and there was no lawful basis to object, counsel cannot be held ineffective and the claim is summarily denied.

(Ex. M, p. 124) (footnote omitted).   The First DCA summarily affirmed without opinion, (Ex. R), thereby leaving the above circuit court judgment as the last reasoned state court decision addressing the merits of petitioner's claim.   *Ylst, supra*.

The state courts determined that the photographs were properly admitted under Florida law and that petitioner's proposed objection would not have succeeded. Although an ineffective assistance of counsel claim is a federal constitutional claim which the court considers in light of the clearly established law of *Strickland*, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law."   *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance – even when based on the failure of counsel to raise a state law claim – is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must

defer to the state's construction of its own law.") (citations omitted);[7] *see also*
*Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense
counsel cannot be deemed ineffective for failing to make a state-law-based objection
when the state court has already concluded that the objection would have been
overruled under state law; to conclude otherwise would require the federal habeas
court to make a determination that the state court misinterpreted state law, which
would violate the fundamental principle that federal habeas courts should not second-
guess state courts on matters of state law); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d
1338, 1354-55 (11th Cir. 2005) (denying federal habeas relief on ineffective
assistance claim based on counsel's failure to make state-law-based objection;
holding that the Florida Supreme Court's conclusion that  the proposed objection
would have been overruled was binding and precluded federal habeas relief on the
ineffective assistance claim: "The Florida Supreme Court already has told us how the
issues would have been resolved under Florida state law had [petitioner's counsel]
done what [petitioner] argues he should have done. . . . It is a 'fundamental principle
that state courts are the final arbiters of state law, and federal habeas courts should
not second-guess them on such matters.'") (alterations in original) (*quoting Agan v.
Vaughn*, 119 F.3d 1538, 1549 (11th Cir.1997)).

Here, as in *Alvord*, *Callahan*, and *Herring*, the state courts have already
answered the question of what would have happened had defense counsel objected
to the photographs on petitioner's proffered basis – the objection would have been
overruled.  This court must defer to the state court's determination of state law.

---

[7]*Alvord* was superseded by statute on other grounds as noted in *Hargrove v. Solomon*, 227
F.  App'x 806 (11th Cir. 2007).

Accordingly, counsel's failure to object cannot be deemed deficient performance, and petitioner cannot show he was prejudiced by counsel's failure to object.

The state courts' rejection of petitioner's claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Thirteen.

| Ground Fourteen | The Cumulative Effect Of Trial Counsel's Ineffectiveness Is Such That It Denied Petitioner The Assistance Guaranteed By The Sixth Amendment Of The Constitution." (Doc. 1, p. 26). |
| --- | --- |

Petitioner claims the cumulative effect of counsel's "ineffective behavior" denied petitioner his constitutional right to the effective assistance of counsel.  (Doc. 1, p. 26).  Respondent asserts petitioner is not entitled to federal habeas relief, because the state postconviction courts' rejection of this claim was not contrary to and did not involve an unreasonable application of Supreme Court precedent.  (Doc. 23, pp. 44-45).  Petitioner's reply concedes that respondent is correct.  (Doc. 32, p. 17).  This court should deny federal habeas relief on this claim due to petitioner's abandonment.

| Ground Fifteen | "Counsel Was Ineffective For Failing To Object To The Trial Court's Use Of Petitioner's Claim Of Innocence As An Aggravating Factor And Sentencing Petitioner To Maximum Sentence Of Fifteen Years." (Doc. 1, p. 27). |
| --- | --- |

Petitioner claims counsel provided ineffective representation at sentencing. (Doc. 1, p. 27).  Respondent asserts petitioner is not entitled to federal habeas relief, because the state postconviction courts' rejection of this claim was not contrary to and did not involve an unreasonable application of *Strickland*.  (Doc. 23, pp. 45-46). Petitioner's reply concedes that respondent is correct.  (Doc. 32, p. 17).  This court should deny federal habeas relief on this claim due to petitioner's abandonment.

| | |
|---|---|
| <u>Ground Sixteen</u> | "<u>Petitioner Contends That The State Has Waived Its Right To Be Heard On Any Of The 16 Grounds That Were Raised In His 3.850 Motion For Post-conviction Relief Because The State Declined To File An Answer Brief In Response To Petitioner's Initial Brief Filed In Appealing The Denial Of His 3.850 Motion.</u>" (Doc. 1, p. 28). |

Respondent asserts this claim does not raise a federal constitutional issue and provides no basis for federal habeas relief, because it amounts to a criticism of Florida's state postconviction process and is based on the State's interpretation of its own rules of procedure.  (Doc. 23, pp. 46-47).  Petitioner's reply concedes that respondent is correct.  (Doc. 32, p. 17).  This court should deny federal habeas relief on this claim due to petitioner's abandonment.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to

this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Tommy Kent Hicks*, Okaloosa County, Florida, Circuit Court Case Number 07-CF-141, be DENIED, and the clerk be directed to close the file.

2. That a certificate of appealability be DENIED.

At Pensacola, Florida this 16th day of December, 2014.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).